# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-671

**FRIENDSHIP HUNTING CLUB**

**VERSUS**

**GENE LEJEUNE**

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 87,726
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
### JUDGE

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[*] Judges.

**AFFIRMED.**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**Post Office Drawer 3448**
**Lafayette, Louisiana  70502**
**(337) 266-2200**
**Counsel for Plaintiff/Appellee:**
     **Friendship Hunting Club**

**J. Clemille Simon**
**Simon Law Offices**
**Post Office Box 52242**
**Lafayette, Louisiana  70505**
**(337) 232-2000**
**Counsel for Defendant/Appellant:**
     **Gene Lejeune**

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**SULLIVAN, Judge.**

Gene Lejeune appeals a judgment granting preliminary injunction in favor of Plaintiff, Friendship Hunting Club (the Club), and against him, denying his exceptions, denying his request for preliminary injunction against Neal Onebane, and vacating a previously issued temporary restraining order (TRO) in favor of him and against Neal Onebane.

This matter centers around the ownership of hunting leases in Vermilion Parish. Resolution of this appeal turns on whether the Club was a partnership or unincorporated association, as asserted by Plaintiff and as the trial court found, or whether Mr. Lejeune had simply used the name "Friendship Hunting Club" to refer to the hunting lease and camp of which he was the sole owner. According to Plaintiff, the original, core members of the Club were Mr. Lejeune; Andrew Onebane (who was married to Mr. Lejeune's daughter, Jean, from before the inception of the hunting lease until November of 1996); Andrew's brother, Neal Onebane; Neal's son, Jake Onebane; and Neal's friend, David Savoy. Plaintiff contends that before signing a lease, Mr. Lejeune met the aforementioned men about forming a hunting club to share expenses and to hunt/fish on the property. The parties dispute whether or not they intended to and did indeed form a legal entity known as the "Friendship Hunting Club" during those meetings. Mr. Lejeune insists that the alleged Club members were only allowed to use the leased property as his invited guests and solely at his discretion. Because we conclude that the trial court did not err in finding that the Club was, in fact, an unincorporated association, we affirm the judgment in its entirety.

1

## FACTS AND PROCEDURAL HISTORY

Mr. Lejeune worked for over twenty years as a hunting and fishing guide at a private hunting club located on land owned by Amoco Production Company near White Lake in Vermilion Parish. In 1996, Amoco offered to lease some of its land to Mr. Lejeune. On September 1, 1996, a four-year surface lease was entered into between Amoco and the Club, represented by Mr. Lejeune. Mr. Lejeune signed the lease, "Friendship Hunting Club, represented by Gene R. Lejeune." The lease required the lessee to obtain insurance. An insurance policy was procured from the Audubon Insurance Group listing the insured as "Friendship Hunting Club." Subsequent leases were entered into in the years that followed; all of them were entered into by the Club with Mr. Lejeune signing the documents as, "Friendship Hunting Club, represented by Gene Lejeune." In 2002, Amoco donated the White Lake property to the State of Louisiana, and since that time, the Club has made lease payments directly to the Louisiana Department of Wildlife and Fisheries.

After discovering that the 2005 lease payment had been paid a month after its due date, Neal Onebane contacted the Department of Wildlife and Fisheries to have all future notices of the lease payment's due date mailed to both him and Mr. Lejeune, the listed contact for the Club. Neal Onebane paid the Club's insurance premium in December of 2006 and its lease payment in July of 2007, along with amounts due for road maintenance and other expenses. He wrote to Mr. Lejeune on July 25, 2007, informing him of those payments and enclosing a $2,000.00 check. The letter stated that the check was "for consulting as per our agreement." In several letters dated July 27, 2007, Mr. Lejeune informed Neal Onebane that he had until August 15, 2007 to vacate the lease and that he was revoking Neal's membership in the Club. Upon

receipt of Mr. Lejeune's correspondence, Neal Onebane and the remaining Club members sought legal advice regarding the situation and on August 2, 2007, a letter was sent to Mr. Lejeune cautioning him that, as an individual member of the Club partnership, he had no right to take unilateral possession of the Club's property or property belonging to the other individual partners. In addition, at a meeting held between Club members Neal, Andrew, and Jake Onebane, a vote was taken whereby Mr. Lejeune was expelled from the Club. A letter memorializing the meeting and vote was sent to Mr. Lejeune on September 3, 2007. Around that same time, Mr. Lejeune placed a chain and lock on the entrance to the Club's property and erected a large sign on the gate leading to the property which read, "FORBIDDEN ENTRY ALL PEOPLE ASSO. WITH NIEL, Jake, Andrew, ONEBANE / FRIENDSHIP HUNTING CLUB, LLC. You Will be Charged TRESPASSING. APPROVED BY V.P.S.D. & D.A."

On October 22, 2007, the Club, appearing through member Neal Onebane, filed a petition for TRO, preliminary injunction, and permanent injunction. The trial court issued the requested TRO, enjoining Mr. Lejeune from interfering with the possession by the Club of its leased property, and preventing Mr. Lejeune from being present on the leased property until a hearing could be held on the request for preliminary injunction, which was set by agreement for November 5, 2007. On November 2, 2007, Mr. Lejeune filed exceptions on no right of action, lack of procedural capacity, and non-joinder of a party, along with a reconventional demand and incorporated motion to dissolve and/or modify the TRO, preliminary injunction and permanent injunction, and a request for a TRO, preliminary injunction and permanent injunction. The trial court signed the reciprocal TRO enjoining Neal Onebane from interfering

with the possession of Mr. Lejeune of the leased property and preventing Neal Onebane from being present on the leased property until the November 5, 2007 hearing on Mr. Lejeune's exceptions and the dueling requests for preliminary injunction.

The trial court denied Mr. Lejeune's exception of non-joinder of a party and Mr. Lejeune was allowed to try his remaining exceptions before the trial on the Club's request for TRO. The basis of the exceptions was Mr. Lejeune's assertion that he was the sole, individual lessee on the leases, regardless of the fact that the leases were signed in what appeared to be a representative capacity. On the second day of testimony on the exceptions, the trial court stated that it had "just about heard everything that it needed to hear" and that it was ready to rule on the exceptions. The trial court stated that, although it was of the opinion that Mr. Lejeune had found the lease, "a loosely held unincorporated association" had been formed and the hunting club's members had mutually approved the lease and maintained the lease through their mutual effort. The trial court denied Mr. Lejeune's exceptions but stated that he would be allowed to proffer any additional evidence that he wished to present. The trial court then began trial of the Club's request for preliminary injunction. In open court on November 7, 2007, the trial court granted the request for preliminary injunction by the Club and against Mr. Lejeune, restraining, enjoining, and prohibiting Mr. Lejeune, his agents, family members, and assigns from: 1) interfering with the Club's possession of all lands covered under the Amoco leases and any structures thereon, and; 2) being present on any land, camp building, and waterfowl hunting area leased by the Club and its members. The trial court denied and dismissed Mr. Lejeune's request for preliminary injunction against Neal Onebane and

4

vacated the TRO previously issued in favor of Mr. Lejeune and against Neal Onebane.

Mr. Lejeune timely appealed the judgment and is now before this court asserting the following assignments of error:

1.   It was error for the trial court to prohibit him from fully presenting testimony and evidence on his exceptions and to rule on the exceptions based upon an incomplete record.

2.   It was error for the trial court to issue the TRO based upon allegations not set forth in the petition for TRO, preliminary injunction, and permanent injunction filed by the plaintiff.

3.   It was error for the trial court to grant the injunction and thus deprive him of his personal lease rights to the property involved.

4.   It was error for the trial court to sign a judgment that was not consistent with the oral reasons for judgment.

**DISCUSSION**

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. at 844. The *Rosell* court stated:

> When findings [of fact] are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Id*. If the trial court's findings of fact "are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting of the trier of fact, it would have weighed the evidence differently." *Id*.

**Assignment of Error Number One**

Mr. Lejeune alleges error in the trial court's having ruled on his exceptions of no right of action and lack of procedural capacity before he finished presenting testimony and evidence in support of those exceptions. The Club counters that Mr. Lejeune was given two days to present evidence on his exceptions. The Club further submits that, given the authority and discretion granted to the court under La.Code Civ.P. art. 1631(A) to control the proceedings so that justice is done, the trial court did not abuse its discretion in limiting the amount of testimony that it would allow to be presented before ruling on the exceptions.

We have reviewed the transcript from the trial of Mr. Lejeune's exceptions and conclude that the trial court had before it sufficient evidence upon which to rule when it terminated the trial on the exceptions and issued its ruling. In addition, the trial court's having allowed Mr. Lejeune to proffer any additional testimony and evidence in support of his exceptions served to ensure that his due process rights were not violated.[1] This assignment of error is without merit.

**Assignment of Error Number Two**

Mr. Lejeune next alleges error in the trial court's issuance of the TRO in favor of the Club. Louisiana Code of Civil Procedure Article 3612(A) provides that "[t]here shall be no appeal from an order relating to a temporary restraining order." Accordingly, this assignment of error lacks merit.

---

[1]As discussed later in this opinion, we reviewed in its entirety the evidence and testimony proffered by Mr. Lejeune in ruling on his third assignment of error.

**Assignment of Error Number Three**

Mr. Lejeune argues that the trial court erred in granting the injunction in favor of the Club and thus depriving him of his personal lease rights to the property. He contends that the trial court erred in denying his exceptions and in ignoring the verified allegations contained in the Club's petition for TRO, preliminary injunction, and permanent injunction. The Club counters that the injunction was properly granted because it met its burden of proof that it was entitled to have a preliminary injunction issued in its favor. More specifically, the Club submits that it proved that it owned the lease, as a separate entity distinct from its members, and that Mr. Lejeune had interfered with the Club's peaceful possession of the leased premises by putting a lock and chain on the gate to the property and by posting no trespassing signs naming the remaining Club members.

Mr. Lejeune contends that the trial court erred in not limiting the Club to the verified allegations made in its petition. He points out that in its petition the Club stated that it was formed in 1998 or 1999 when the hunting lease was originally acquired. However, documents that he submitted in a return of a subpoena requesting copies of all leases involving the property showed that the original lease was actually entered into in 1996, several years earlier than alleged by the Club. Although Mr. Lejeune assigns error to what he terms the trial court's having "ignored" the verified allegations of the Club's petition, he cites no jurisprudence in support of this contention.

According to La.Code Civ.P. art. 3609, "[t]he court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings or supporting

7

affidavits, *or may take proof as in ordinary cases*." (Emphasis added.) The trial court did not ignore the allegations in the Club's petition; rather, it simply took the proof that was offered by both sides of this dispute, and its doing so was sanctioned by the Louisiana Code of Civil Procedure. Mr. Lejeune's claim of error in this regard is unfounded.

Both Mr. Lejeune and the Club rely on *Ermert v. Hartford Insurance Co.*, 559 So.2d 467 (La.1990) as support for their position. *Ermert* involved a suit filed by a hunter who was injured when another hunter's shotgun accidently discharged. The injured hunter alleged that the negligent hunter and his hunting buddies were members of an unincorporated association so as to make the association and its members vicariously liable for one another's tortious acts. The court of appeal held that the negligent hunter's hunting buddies who were present at the hunting camp at the time of the accident were vicariously liable with him because of their membership in an unincorporated association. The Louisiana Supreme Court reversed, finding that the negligent hunter and his friends "had not formed an unincorporated association because the group did not intend to create a separate juridical entity." *Id*. at 469. The supreme court found that the lower courts had erred in assuming that an unincorporated association existed without applying "the appropriate legal precepts to determine if such an association had been formed." *Id*. at 472. The supreme court explained that an unincorporated association is created in the same manner as partnership, whereby two or more persons contract to combine their knowledge, resources, efforts, or activities for a purpose other than profit. The supreme court concluded that in order for an unincorporated association to exist, the parties *must* intend to create a separate entity with a juridical personality distinct from its

8

members. "While the parties need not specifically intend or have knowledge of all the legal ramifications of juridical personality, they must at least conceive of their creation as a being or thing separate from themselves." *Id*. at 474.

In finding that no such unincorporated association existed in *Ermert*, the supreme court noted the following: (1) the campsite was leased by an individual, Russell Larrieu; (2) although his five friends helped him build the camphouse, Mr. Larrieu, personally, paid for and was the owner of the improvements; (3) each of the friends testified that they understood that they had to check with Mr. Larrieu before visiting or using the camphouse; (4) Mr. Larrieu leased hunting rights on ponds near the camphouse; (5) Mr. Larrieu collected approximately $52.00 per year from each of his friends to pay for the lease and other necessities; (6) no name was given to the group; and (7) no meetings were held. Under those circumstances, the supreme court concluded that the parties did not intend to form an unincorporated association.

The Club asserts that the facts present herein are much different than those in *Ermert* and compel a different result. We agree. Of foremost importance is the fact that *all* of the leases were entered into in the name of the "Friendship Hunting Club" and were signed by Mr. Lejeune in a representative capacity on behalf of the Club. This is true despite the fact that no one disputes that Mr. Lejeune found the lease. Regardless of who came up with the name "Friendship Hunting Club," that name was universally used to refer to the hunting lease and camp. The Club procured insurance in its own name. The expenses of the Club were jointly paid by its members, often without any contribution from Mr. Lejeune. In fact, Mr. Lejeune admitted on cross-examination that up until the 2007 hunting season, neither he nor his immediate

9

family could afford to pay the lease payments or to pay to maintain the waterfowl lease so that it was suitable for hunting. Finally, the Club held meetings and agreed upon the rules under which it would operate.

We are convinced that the evidence overwhelmingly supports the trial court's conclusion that an unincorporated association had been formed before the acquisition of the first lease, and, thus, the Club was the owner of the lease rather than Mr. Lejeune personally. Mr. Lejeune admitted that he had put a lock and chain on the gate to the leased property and that he posted no trespassing signs naming the remaining Club members. Having met its burden of proof, the Club was entitled to have a preliminary injunction issued in its favor.

The basis for Mr. Lejeune's exception of non-joinder of a party was that not all parties to the leases had been joined in the suit. Although Mr. Lejeune assigned error in the trial court's denial of his exception of non-joinder, he did not brief the issue. Accordingly, we consider this portion of Mr. Lejeune's third assignment of error as abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4.

Having found the trial court did not err in concluding that the Club was an unincorporated association, we likewise find that the trial court properly denied Mr. Lejeune's exceptions of no right of action and lack of procedural capacity because as a separate juridical entity, the Club had the capacity to sue in its own name. *See* La.Code Civ.P. art. 689. In addition, we have thoroughly reviewed the additional testimony and evidence proffered in support of Mr. Lejeune's exceptions and we have discovered nothing to indicate that the trial court erred in denying the exceptions of no right of action and lack of procedural capacity.

10

This case was necessarily decided based upon the trial court's assessment of the credibility of the witnesses in conjunction with the documentary evidence. The appellate standard of review with regard to factual findings made by the trial court dictates that we afford great deference to those findings. The parties and witnesses in this matter gave conflicting testimony regarding the ownership of the hunting leases. Given that the documentary evidence overwhelmingly supported the Club's allegations, we cannot say that the trial court was manifestly erroneous or clearly wrong in ruling against Mr. Lejeune and in favor of the Club. Mr. Lejeune's third assignment of error lacks merit.

**Assignment of Error Number Four**

Finally, Mr. Lejeune contends that the trial court erred in signing a judgment that was not consistent with its oral reasons. More specifically, he claims that although the trial court ordered the Club to return to him $2,000.00 to compensate for his not being allowed to be present and hunt on the property during the 2007 season, and although the trial court stated that a hearing would be set in the future to determine whether he was owed any additional funds due to his loss of the right to hunt, the judgment did not contain language noting those two aspects of the trial court's ruling. Mr. Lejeune adds that despite the fact that he twice objected to the wording of the judgment in correspondence to the court, the trial court nevertheless signed a judgment that did not accurately reflect its entire ruling. The Club counters that the only issues before the trial court were the competing requests for preliminary injunction and the exceptions filed by Mr. Lejeune and that the rulings on those issues were accurately reflected in the judgment.

In *Pitard v. Schmittzehe*, 28,571, p. 4 (La.App. 2 Cir. 8/21/96), 679 So.2d 515, 517, the second circuit noted the long-standing principle that "[w]hen the substance of the trial court's written judgment differs from its oral or written reasons for judgment, the written judgment controls, notwithstanding that the reasons for judgment may arguably be construed as an indication of the court's true or actual intention."

The trial court informed the parties that it intended to have an evidentiary hearing on Mr. Lejeune's reconventional demand at a later date after the parties had briefed the issue. In addition, the trial court was made aware of Mr. Lejeune's objections to the wording of the judgment prepared by the Club and chose to sign it despite those objections. We conclude that its having done so was not manifestly erroneous or clearly wrong. Mr. Lejeune's final assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's November 13, 2007 judgment in its entirety. All costs of this appeal are assessed against the appellant, Gene Lejeune.

**AFFIRMED.**

12